UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARIA SANTINO and
GIUSEPPE SANTINO,

                              Plaintiffs,

                -vs-                                             09-CV-982-JTC

NCO FINANCIAL SYSTEMS, INC.,

                              Defendant.
_____

By order of Chief United States District Judge William M. Skretny dated November 5, 2010 (Item 27), this matter has been reassigned to the undersigned for all further proceedings.  Plaintiffs Maria and Giuseppe Santino claim that defendant NCO Financial Systems, Inc. ("NCO"), a debt collection agency, made repeated telephone calls to their home phone attempting to collect a debt which plaintiffs were not obligated to pay, in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*., and the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227 (*see* Item 1).  Defendant has moved pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for partial judgment on the pleadings dismissing plaintiffs' TCPA claim (Item 14).

## BACKGROUND

Plaintiffs allege in their complaint that NCO made "repeated annoying and otherwise harassing telephone calls" to plaintiffs' home telephone for the purpose of collecting a debt on behalf of a creditor of a person named "Hazel Meyers."  Item 1, ¶¶ 17-21.  In July 2009, plaintiff Maria Santino spoke with a representative of NCO, who identified himself as "Mr.

Parker." Ms. Santino informed Mr. Parker that plaintiffs did not know anyone named Hazel

Meyers, and told him to stop calling. According to plaintiffs, Mr. Parker became belligerent,

and called Ms. Santino a "liar." *Id.* at ¶ 23. Plaintiffs allege that thereafter NCO "began

calling more frequently . . . , making daily telephone calls." *Id.* at ¶ 24.

Plaintiffs filed this action on November 13, 2009, seeking actual and statutory

damages, costs, and attorneys' fees pursuant to the FDCPA in Count One, and the TCPA

in Count Two. *Id.* at ¶¶ 30-38. Defendant now moves for partial judgment on the

pleadings dismissing the TCPA claim as a matter of law on the ground that the alleged

telephone calls are subject to an express exemption from the TCPA's prohibitions, as set

forth in the regulations promulgated and interpreted by the Federal Communications

Commission ("FCC").

For the reasons that follow, defendant's motion is granted.

## DISCUSSION

### I.   Judgment on the Pleadings

Rule 12(c) provides that "[a]fter the pleadings are closed–but early enough not to

delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).

> The standard for granting a Rule 12(c) motion for judgment on the pleadings
> is identical to that of a Rule 12(b)(6) motion for failure to state a claim. In
> both postures, the district court must accept all allegations in the complaint
> as true and draw all inferences in the non-moving party's favor.

*Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (citations

omitted). To survive a motion to dismiss, a claim "must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

___U.S.___,___, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In this case, defendant contends that plaintiffs' TCPA claim is implausible on its face because the telephone calls at issue in this case–*i.e.*, prerecorded calls intended solely for the collection of a debt–are specifically exempted from the TCPA's coverage by rule and order of the FCC.

## II.      Telephone Consumer Protection Act

In an effort to address consumer privacy concerns brought about by the "immense" growth of the telemarketing industry, Congress enacted the TCPA in 1991 making it unlawful for any person within the United States "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempt by rule or order by the [FCC] . . . ."  47 U.S.C. § 227(b)(1)(B); *see* S. REP. NO. 102-178, P.L. 102-243, at 2 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968, 1969-70.  The statute further provides that the FCC:

> may, by rule or order, exempt from the requirements of paragraph (1)(B) of this subsection, subject to such conditions as the [FCC] may prescribe--
>
>   (i) calls that are not made for a commercial purpose; and
>
>   (ii) such classes or categories of calls made for commercial purposes as the [FCC] determines--
>
>> (I) will not adversely affect the privacy rights that this section is intended to protect; and
>>
>> (II) do not include the transmission of any unsolicited advertisement . . . .

47 U.S.C. § 227(b)(2)(B).

In the exercise of this express authority to create exemptions from the TCPA's requirements, the FCC promulgated rules, codified at Title 47, Part 64, Subpart L, of the Code of Federal Regulations, and has periodically issued rulings to clarify its interpretation of the scope and limitations of the coverage and exemptions.  Specifically with respect to the issues presented by this motion, the FCC's rules provide:

> (a)  No person or entity may:
> . . . .
>
> (2) Initiate any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call:
> . . . .
>
> (iii) Is made for a commercial purpose but does not include or introduce an unsolicited advertisement or constitute a telephone solicitation;
>
> (iv) Is made to any person with whom the caller has an established business relationship at the time the call is made . . . .

47 C.F.R. § 64.1200(a)(2).

In a Report and Order released on October 16, 1992 (the "1992 FCC Ruling"), the FCC explained at length its efforts "to implement the TCPA in a way that reasonably accommodates individuals' rights to privacy as well as the legitimate business interests of telemarketers."  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8754, ¶ 3 (available on Westlaw at 1992 WL 690928 (F.C.C.)).  Upon considering comments to its April 1992 Notice of Proposed Rulemaking ("NPRM"), the FCC concluded:

-4-

> that an express exemption from the TCPA's prohibitions for debt collection calls is unnecessary because such calls are adequately covered by exemptions we are adopting here for commercial calls which do not transmit an unsolicited advertisement and for established business relationships. As proposed in the NPRM, these exemptions would also apply where a third party places a debt collection call on behalf of the company holding the debt. Whether the call is placed by or on behalf of the creditor, prerecorded debt collection calls would be exempt from the prohibitions on such calls to residences as: (1) calls from a party with whom the consumer has an established business relationship, and (2) commercial calls which do not adversely affect privacy rights and which do not transmit an unsolicited advertisement.

*Id.* at.8773, ¶ 39.

In two subsequent rulings, the FCC reaffirmed this determination that prerecorded debt collection calls were covered by the exemption set forth at 47 C.F.R. § 64.1200(a)(2)(iii).  On August 7, 1995, the FCC released a Memorandum Opinion and Order (the "1995 FCC Ruling") stating as follows:

> As we stated in the [1992 FCC Ruling], prerecorded debt collection calls are adequately covered by exemptions adopted in our rules.  Our rules explicitly exempt calls made either by a party with whom the subscriber has an established business relationship or calls that do not transmit an unsolicited advertisement and are made for a commercial purpose. . . .  We have specifically noted that prerecorded debt collection calls are exempt from the prohibitions on prerecorded calls to residences as commercial calls which do not transmit an unsolicited advertisement.

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12400, ¶ 17 (internal quotation marks and alterations omitted) (1995 WL 464817 (F.C.C.)).  More recently, in a Declaratory Ruling released on January 4, 2008, the FCC explained:

> The Commission first adopted rules implementing the TCPA in 1992.  Under these rules, calls delivering artificial or prerecorded messages to residences were prohibited, absent the express consent of the called party.  Exempted from this prohibition were certain categories of calls that the Commission determined did not adversely affect consumers' privacy rights.  In the [1992

FCC Ruling], the Commission concluded that an express exemption for debt collection calls to residences was unnecessary as such calls fall within the exemptions adopted for commercial calls which do not transmit an unsolicited advertisement . . . .

In 1995, the Commission released a Memorandum Opinion and Order addressing petitions for reconsideration of the [1992 FCC Ruling].  Among other things, the Commission clarified that . . . prerecorded debt collection calls are exempted from Section 227(b)(1)(B) of the TCPA which prohibits prerecorded or artificial voice messages to residences . . . .

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 561-62, ¶¶ 4, 5 (2008 WL 65485 (F.C.C.)).  "[W]e agree . . . that calls solely for the purpose of debt collection are not telephone solicitations and do not constitute telemarketing."  *Id.* at 565, ¶ 11.

 In support of their TCPA claims in this action, plaintiffs allege that NCO "initiat[ed] telephone calls to the Plaintiffs' home telephone using an artificial and/or prerecorded voice to deliver messages without having a lawful basis and/or the consent of Plaintiffs to leave such messages."  Item 1, ¶ 31.  Plaintiffs do not dispute that the prerecorded calls at issue were made for the commercial purpose of collecting a debt, nor is it disputed that none of these calls involved an "unsolicited advertisement" or "telephone solicitation."  Rather, plaintiffs contend that the exemptions from the TCPA's requirements, as promulgated by the FCC and codified at 47 C.F.R. § 64.1200(a)(2), were not intended to protect debt collectors, like NCO, who repeatedly place erroneous automated debt collection calls to non-debtors.

Plaintiffs rely on the holding in *Watson v. NCO Group, Inc.*, 462 F. Supp. 2d 641 (E.D.Pa. 2006), in which the plaintiff claimed NCO violated the TCPA by making more than 200 automated calls to the plaintiff's residential telephone in a five month period,

attempting to collect a debt he did not owe. NCO moved to dismiss the TCPA claim, arguing (as they do in this case) that all debt collection calls, "including those erroneously made to non-debtors," are exempt from the requirements of the TCPA under the FCC's regulations and explanatory rulings. *Id.* at 644. The *Watson* court rejected this argument, noting initially that the FCC has not directly addressed the issue of erroneous debt collection calls in its rulemaking and explanatory orders. According to *Watson*, the 1992 and 1995 Rulings reflect the FCC's view that debt collection calls fall under either of two exemptions: (1) the exemption for established business relationships (47 C.F.R. § 64.1200(a)(2)(iv)), or (2) the exemption for commercial calls that do not adversely affect privacy interests and do not transmit an unsolicited advertisement (47 C.F.R. § 64.1200(a)(2)(iii)). The court found that since an erroneously called non-debtor has no prior or existing business relationship with the creditor, it followed that the calls at issue did not fall into the first exemption. With respect to the second exemption, the court stated:

> Since it is clear that no advertisement was transmitted, the relevant inquiry is whether privacy rights are adversely affected. In addressing this question, Defendants contend that the FCC already declared that debt collection calls do not produce such an effect. In so asserting, Defendants overlook the fact that the FCC made this pronouncement under the assumption that debt collection calls would be made only to debtors (i.e. those with an established business relationship). Because the facts of this case belie that assumption, the FCC's pronouncement does not address the privacy rights implicated here. The fact is, by virtue of staying out of debt, a non-debtor has vastly greater privacy rights than someone who has fallen into debt. While the FCC has declared that a debtor's privacy rights are not adversely affected when he receives debt collection calls, the Court is convinced that a non-debtor's rights are in fact violated when he is subjected to repeated annoying and abusive debt collection calls that he remains powerless to stop.

*Watson*, 462 F. Supp. 2d at 644-45 (citation omitted).  The court therefore found that the exemption set forth at 47 C.F.R. § 64.1200(a)(2)(iii) did not apply to the automated debt collection calls at issue, and denied NCO's motion to dismiss the TCPA claim.  *Id.* at 645.

While the reasoning in *Watson* might be seen as persuasive on a common sense level (given the excessive number of automated calls alleged to have occurred during a relatively short period), this court does not regard the district court's holding in that case as binding, for several reasons.  First and foremost, in enacting the TCPA, Congress explicitly granted the FCC authority to determine "by rule or order" whether exempting certain categories of commercial  telephone calls from the statute's requirements will "adversely affect the privacy rights that [the TCPA] was intended to protect . . . ." 47 U.S.C. § 227(b)(2)(B)(ii)(I).  There can be no question that the FCC was acting within the bounds of this authority when it issued its April 1992 Notice of Proposed Rulemaking, received and considered comments, and issued a succession of orders and rulings setting forth the basis for its conclusion "that debt collection calls are exempt from the TCPA's prohibitions against prerecorded message calls because they are commercial calls which do not convey an unsolicited advertisement and do not adversely affect residential subscriber rights."  7 FCC Rcd. at 8772, ¶ 36.  In this court's view, the district court's holding in *Watson* that the FCC reached its conclusion without considering the privacy rights of non-debtors fails to accord appropriate judicial deference to agency rules and orders made in accordance with the TCPA's clear congressional authorization.  *See United States v. Mead Corp.*, 533 U.S. 218, 229 (2001) (express congressional authorization to engage in rulemaking or adjudication is a "very good indicator" of delegation warranting judicial

deference) (citing *Chevron U.S.A. v. Natural Res. Def. Council*, 467 U.S. 837 (1984) (setting forth two-step procedure for evaluating whether an agency's interpretation of a statute is entitled to deference); *see also Leyse v. Clear Channel Broadcasting, Inc.* 2006 WL 23480, at *3 (S.D.N.Y.   Jan. 5, 2006) (applying *Chevron* deference to FCC's determination of scope of exemption set forth at 47 C.F.R. § 64.1200(a)(2)(iii), notwithstanding "serious questions as to whether this is the type of phone call Congress intended to exempt when it granted such authority to the FCC"), *aff'd*, 301 Fed. Appx. 20 (2d Cir. 2008).

In addition, several decisions subsequent to *Watson* provide support for defendant's position that prerecorded calls intended solely for the collection of a debt–even calls received by non-debtors–are specifically exempted from the TCPA's coverage by rule and order of the FCC.  *See Meadows v. Franklin Collection Service, Inc.*, 2010 WL 2605048, at *6 (N.D. Ala. June 25, 2010) (FCC's determination that all debt collection circumstances are excluded from TCPA's coverage is broad enough to cover debt collection calls to non-debtor), *aff'd in relevant part*, 2011 WL 479997 (11th Cir. Feb. 11, 2011); *Pugliese v. Professional Recovery Service, Inc.*, 2010 WL 2632562, at *7 (E.D. Mi. June 29, 2010) (automated debt collection calls made to plaintiffs' residential telephone line are exempt from the TCPA's requirements) (citing *Bates v. I.C. Systems, Inc.*, 2009 WL 3459740, *1 (W.D.N.Y., Oct.19, 2009) ("[D]ebt collection calls made to a residential line are exempt from the TCPA.")).   Indeed, in the *Meadows* case, both the district and circuit courts specifically rejected the argument that the exemptions established by the FCC for debt collection calls do not apply to non-debtors.  According to the Eleventh Circuit:

> [B]ecause [the debt collection agency] had an existing business relationship with the intended recipient of its prerecorded calls, and the calls were made for a commercial, non-solicitation purpose, . . . those calls are exempt from the TCPA's prohibitions of prerecorded calls to residences.
>
> . . .   [T]he FCC has determined that all debt-collection circumstances are excluded from the TCPA's coverage, and thus the exemptions apply when a debt collector contacts a non-debtor in an effort to collect a debt.  Otherwise, a debt collector that used a prerecorded message would violate the TCPA if it called the debtor's number and another member of the debtor's family answered.

*Meadows*, 2011 WL 479997, at *4.

Finally, to the extent plaintiffs seek a ruling regarding the validity of the FCC's rulings on the scope of the debt collection exemptions, this court is without jurisdiction to do so. *See, e.g, Leckler v. Cashcall, Inc.*, 2008 WL 5000528, at *2-3 (N.D.Cal. Nov. 21, 2008) (Hobbs Act, 28 U.S.C. § 2342, in conjunction with judicial review provisions of Communications Act, 47 U.S.C. § 402(a), vests federal courts of appeals with exclusive jurisdiction to determine validity of final orders of the FCC).

Based on this analysis, the court concludes that the conduct on the part of defendant complained of in this case fits squarely within the exemption provided in 47 C.F.R. § 64.1200(a)(2)(iii), as interpreted by the FCC in the 1992, 1995, and 2008 Rulings described above.  Accordingly, plaintiff's TCPA claim is implausible on its face, and defendant's motion for judgment on the pleadings is granted dismissing this claim as a matter of law.

A telephone conference with counsel will be held on April 4, at 2 p.m., to discuss a schedule for further proceedings.  The court will initiate the call.

So ordered.

\s\ John T. Curtin
_____
JOHN T. CURTIN
United States District Judge

Dated: February 23, 2011
p:\pending\2009\09-982.feb16.2011